**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cecilia M. Bean,<br><br>    Plaintiff,<br><br>vs.<br><br>BAC Home Loans Servicing, L.P., f/k/a Countrywide Home Loans Servicing, L.P.; Mortgage Electronic Registration Systems, Inc.,<br><br>    Defendants. | No. 11-CV-553-PHX-GMS<br><br>**ORDER** |

    Pending before the Court is Defendants' Motion to Dismiss. (Doc. 12). For the reasons stated below, Defendants' motion is granted in part and denied in part.

## BACKGROUND

    On March 19, 2007, Plaintiff Cecilia Bean borrowed $267,000 from Duxford Financial Inc. to purchase real property. In connection with this loan, Plaintiff executed a promissory note and a Deed of Trust. The Deed of Trust states that Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is the "beneficiary" for Duxford Financial and for Duxford's successors and assigns. As beneficiary, MERS received legal title to the interests granted by Plaintiff in the Deed of Trust, including "the right to foreclose and sell the Property." (Doc. 1, Ex. 1).

    Sometime prior to December 2009, Defendant BAC Home Loans Servicing, L.P.

began servicing Plaintiff's loans. Also sometime prior to December 2009, Plaintiff became delinquent on her note payments. On December 3, 2009, Defendant BAC issued a Notice of Intent to Accelerate. Plaintiff alleges that in April 2010 she and Defendant BAC entered into an oral agreement to modify the terms of her loan and reduce her payments to $737 per month. She also alleges that BAC accepted payments of $737 from her for the months of April, May, and June 2010. Plaintiff alleges, however, that BAC rejected her July 2010 payment, stating that the loan was in foreclosure and therefore that BAC would not accept partial payment. On January 7, 2011, trustee Michael A. Bosco, Jr. recorded a Notice of Trustee's Sale against the property.

On March 4, 2011, Plaintiff filed her Complaint in this action in the Maricopa County Superior Court. On March 24, 2011, the action was removed to this Court. Defendants now move to dismiss Plaintiff's Complaint for failure to state a claim. (Doc. 6).

## DISCUSSION

**I.  Legal Standard**

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (internal citations omitted) (quoting *Twombly*, 550 U.S. at 557).

## II. Legal Analysis

In her Complaint, Plaintiff attempts to assert claims for injunction against trustee's sale, promissory estoppel, breach of contract, tortious interference with the use and enjoyment of property, wrongful foreclosure, impracticability of performance,[1] and quiet title. Plaintiff has failed, however, to state a valid claim on any of these grounds except for promissory estoppel.

### 1. Injunction against Trustee's Sale

Plaintiff alleges that she is entitled to injunctive relief against the trustee's sale because Defendant BAC does not "have ownership of and possession of both the Note and Trust Deed." (Doc. 1, Ex. 1 at ¶ 97). Plaintiff contends that MERS is a fictitious beneficiary and therefore lacked authority to assign its interest in the Deed of Trust to Defendant BAC. Courts in this district, however, have routinely upheld the validity of the MERS system. *See, e.g.*, Warren v. Sierra Pacific Mortg. Services Inc., 2011 WL 1526957, at *5 (D. Ariz. April 22, 2011) ("Plaintiffs' contention here hinges on its unsupported challenge to the legitimacy and authority of the MERS system and its speculative assertion that MERS did not have authority to assign the deed of trust to CitiMortgage, arguments which have repeatedly been rejected by district courts in the District of Arizona."); *Ciardi v. Lending Co., Inc.*, 2010 WL 2079735, at *3 (D. Ariz. May 24, 2010) ("To the extent Plaintiffs rely on a theory that [MERS] must have an interest in the actual note, Plaintiffs have failed to cite any law so requiring."). Moreover, Plaintiff has "not shown that the alleged illegalities associated with the MERS system injured [her] or violated state law." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1046 (9th Cir. 2011). Her "fictitious beneficiary" theory therefore does not support the injunctive relief she seeks.

Plaintiff also alleges that Mark S. Bosco, who assigned the Deed of Trust from MERS to BAC, was not an officer of MERS and therefore that the assignment lacked legal effect.

---

[1] Although Plaintiff's "impracticability of performance" allegations are not numbered as an independent claim as are her other claims, the Court will treat Plaintiff's "impracticability of performance" allegations as a separate cause of action.

Plaintiff bases this allegation on the fact that "Mr. Bosco is a partner . . . of Tiffany & Bosco, P.A." (Doc. 1, Ex. 1, at ¶¶ 50, 51). Plaintiff's assumption, however, that Mark Bosco could not be both an officer of MERS and an officer of Tiffany and Bosco is faulty. As one court has explained, it is common for a person to be employed by a financial institution and at the same time be a MERS officer:

> MERS instructs its members to have someone on their own staff become a certified MERS officer with authority to sign on behalf of MERS. This procedure allows the member that owns the indebtedness to assign or foreclose the mortgage loan in the name of MERS, eliminating the need to either work through a third party or to execute an assignment of the security instrument from MERS back to the member. *Jackson v. Mortgage Electronic Registration Systems, Inc.*, 770 N.W.2d 487, 491 (Minn. 2009).

In other words, "MERS relies on its members to have someone on their own staff become a MERS officer with the authority to sign documents on behalf of MERS." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1040 (9th Cir. 2011) (citing Robert E. Dordan, *Mortgage Electronic Registration Systems (MERS), Its Recent Legal Battles, and the Chance for a Peaceful Existence*, 12 Loy. J. Pub. Int. L. 177, 178 (2010)). The mere fact that Mark Bosco is a partner of Tiffany and Bosco does not, therefore, make it plausible that he lacked authority to assign MERS's interest in the Deed of Trust.

Plaintiff alternatively alleges that even if MERS held and transferred to BAC a valid interest in the Deed of Trust, Duxford Financial, not MERS, retained all interest in the Promissory Note, and that Defendants have not produced any documents which evidence Duxford Financial's transfer of the Promissory Note to Defendant BAC. (Doc. 1, Ex. 1 at ¶¶ 53–55). In other words, Plaintiff is alleging that before BAC can exercise its interests in the Deed of Trust, it must show that it is the valid holder of not just the Deed, but also the Note. This "show me the Note" theory, however, has been routinely rejected under Arizona law. *See, e.g., Hogan v. Washington Mutual Bank*, 2011 WL 3108343, at *3 (Ariz. Ct. App. July 26, 2011) ("[Plaintiff] concludes that because no evidence establishes that Washington Mutual is a 'person entitled to enforce' the note . . . .it has no 'legal right to foreclose.' We disagree because Hogan's focus on the note is misplaced."); *Diessner v. Mortgage Elec.*

*Registration Sys.*, 618 F. Supp. 2d 1184, 1187–88 (D. Ariz. 2009) (collecting cases); *Mansour v. Cal–Western Reconveyance Corp.*, 618 F. Supp. 2d 1178, 1181 (D. Ariz. 2009) (collecting cases).

In connection with her "show me the Note" theory, Plaintiff raises a "split the Note" theory. Plaintiff argues under this split the Note theory that "the entity to which she owes the money [must be] identical to the entity that claims the right to enforce payment of that money through the trust deed foreclosure scheme." (Doc. 15 at 10). In other words, Plaintiff is arguing that the exact same entity must hold both the Note and the Deed of Trust. The Ninth Circuit, however, recently rejected this argument in *Cervantes v. Countrywide Home Loans*, holding that such a "split only renders the mortgage unenforceable if MERS or the trustee, as nominal holders of the deeds, are not agents of the lenders." 656 F.3d 1034, 1044 (9th Cir. 2011). Plaintiff has not alleged that MERS and/or its assigns are not agents of the lenders. Her split the Note theory is therefore meritless.

Plaintiff lastly contends that Defendants are proceeding "in breach of the notice requirements of the Trust Deed." (Doc. 1, Ex. 1 at ¶ 97). As discussed in Section II.3 below, however, these breach of notice allegations, which Plaintiff has brought as a separate cause of action, lack merit. In short, none of the theories which Plaintiff advances as grounds on which the Court should enjoin the trustee's sale are valid legal theories.

**2.     Promissory Estoppel**

Plaintiff also brings promissory estoppel claims against Defendant BAC in which she seeks both damages and equitable relief. (Doc. 1, Ex. 1 at ¶¶ 104–122). Under Arizona common law, a party can be estopped from breaching a promise where "injustice can be avoided only by enforcement of the promise." *Double AA Builders, Ltd. v. Grand State Const. L.L.C.*, 210 Ariz. 503, 507, 114 P.3d 835, 839 (App. 2005) (citing RESTATEMENT (SECOND) OF CONTRACTS § 90(1)). Promissory estoppel consists of four elements: 1) Defendant made a promise, 2) it was reasonably foreseeable that Plaintiff would rely on that promise, 3) Plaintiff did in fact rely on that promise, and 4) Plaintiff had a justifiable right to rely on the promise. *Id.* (internal citations omitted). Plaintiff has adequately plead all these

elements. Plaintiff alleges that BAC promised to lower her monthly payment to $737 and cure her default on the mortgage by adding the shortfall to the principle and that BAC accepted this lower monthly payment for three months. (Doc. 1, Ex. 1 at ¶¶ 14, 15). Plaintiff further alleges that she justifiably relied on this promise by "foregoing alternatives available to [her], including obtaining funds from third parties, selling the residence or pursuing other options," and that Defendant should have reasonably foreseen that she would so rely. (*Id.* at ¶ 108–09).

Defendant contends that Plaintiff "does not allege any *specific*, realistic 'option' that was then available to her but no longer is because of her reliance on the alleged promise." (Doc. 17 at 2–3) (emphasis added). A complaint, however, "need not contain detailed factual allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.,* 534 F.3d 1017, 1022 (9th Cir. 2008) (citing *Twombly*, 550 U.S. at 570). It is plausible that Plaintiff can produce specific evidence showing that she could have obtained funds from third parties and that these funds would have allowed her to regain good standing with her loan. She has, therefore, adequately pled her promissory estoppel claim.

### 3. Breach of Contract

Plaintiff next alleges that Defendant BAC breached its notice obligations under the Deed of Trust. The Deed of Trust states that upon default by Plaintiff, BAC should provide Plaintiff with at least thirty days written notice specifying: "(a) the default; (b) the action required to cure the default; (c) a date . . . by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration . . . and sale of the Property." (Doc. 1, Ex. 1 at 45). Plaintiff acknowledges in her Complaint that "[b]y letter dated December 3, 2009, Defendant BAC issued a Notice of Intent to Accelerate." (Doc. 1, Ex. 1 at ¶ 29). She alleges, however, that in the 2009 Notice, Defendant failed to specify the default, how to cure the default, or a date by which the default was to be cured. (Doc. 1, Ex. 1 at ¶ 125). Plaintiff also alleges that the 2009 Notice was mooted by BAC's April 2010 promise to modify the terms of her loan agreement.

Nevertheless, in a second Notice of Intent to Accelerate dated September 14, 2010,[2] BAC states clearly that the loan is "in serious default" because Plaintiff has $11,969.24 in unpaid monthly charges and late charges. (Doc. 12, Ex. 6). This September 2010 Notice also states that "[t]he default will <u>not</u> be considered cured unless BAC . . . receives 'good funds' in the amount of $11,969.24 on or before October 14, 2010." (*Id.*). In her Response to Defendants' motion, Plaintiff does not dispute the authenticity of this second notice or contend that it failed to provide the written notice required by the Deed of Trust. Plaintiff has therefore failed to state a claim for breach of the Deed of Trust against BAC.

### 4. Tortious Interference with Use and Enjoyment of Property

Plaintiff also attempts to state a claim against Defendant BAC for tortious interference with the use and enjoyment of property. (Doc. 1, Ex. 1 at ¶¶ 129–132). This tort is not recognized, however, in the state Arizona. *See Schrock v. Federal Nat. Mortg. Ass'n*, 2011 WL 3348227, at *8 (D. Ariz. Aug. 3, 2011) (dismissing a Plaintiff's claim for tortious interference with the use and enjoyment of property because there is "no analogous case which recognizes such a tort"). Like the cases cited by the plaintiffs in *Schrock*, the cases cited by Plaintiff in support of her theory "all focus on the issue of whether loss of property can support damages for [infliction of] emotional distress." *Id.* (collecting cases). Plaintiff has therefore failed to state a valid claim for tortious interference with the use or enjoyment of property.

### 5. Wrongful Foreclosure

Plaintiff next attempts to state a claim against Defendants for wrongful foreclosure.

---

[2] The Court takes judicial notice of this second Notice of Intent to Accelerate because it is a document upon which "the plaintiff's claim depends . . . the defendant [has] attache[d] the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of [this] document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).

Arizona state courts have not yet determined whether this cause of action exists under Arizona law. Even were the Court to recognize Plaintiff's wrongful foreclosure claim, however, "for the claim to be ripe, a foreclosure sale must have occurred." *Jones v. Bank of Am.*, 2010 WL 2228517, at *3 (D. Ariz. June 1, 2010). Plaintiff alleges in the Complaint that Defendants are "threatening and endeavoring" to conduct a trustee's sale. (Doc. 1, Ex. 1 at ¶¶ 137–38). (Doc. 12 at 12). She does not allege that a sale has already occurred. "Therefore, this claim is not ripe for adjudication and Plaintiff's claim for wrongful foreclosure is dismissed. Should the foreclosure sale occur, Plaintiff may move to amend the complaint to re-assert this claim." *Jones,* 2010 WL 2228517, at *3.

### 6. **Impracticability of Performance/Frustration of Purpose**

Plaintiff contends that she should be relieved from her loan obligations because they are "impracticable" given the sudden decline in the residential real estate market. (Doc. 1, Ex. 1 at ¶¶ 65–85). Under the doctrine of impracticability of performance, a contract may be discharged "when certain events occurring after a contract is made constitute an impediment to performance by either party." *7200 Scottsdale Road General Partners v. Kuhn Farm Machinery, Inc.*, 184 Ariz. 341, 345, 909 P.2d 408, 412 (App. 1995). This doctrine is limited, however, "to three categories of supervening events: death or incapacity of a person necessary for performance, destruction of a specific thing necessary for performance, and prohibition or prevention by law." *Id.* Plaintiff does not allege any of these supervening events.

Plaintiff alternatively argues that her loan should be discharged because the purposes behind the loan have been frustrated. She alleges that "[t]he non-occurrence of extreme real estate depression . . . and the non-occurrence of a drastic loss of value in the Property, were basic assumptions made by the parties under the loan contract" and that "[n]either Plaintiff nor Duxford foresaw the market downturn." (*Id*. at ¶¶ 78–79). In essence, Plaintiff alleges that it is no longer economically feasible for her to pay off property which is only worth half of her mortgage. Under the frustration of purpose doctrine, however, "mere economic impracticality is no defense to performance of a contract." *7200 Scottsdale Road*, 184 Ariz.

- 8 -

1 at 351. Although the sudden depreciation in Plaintiff's property "may have rendered [her]
2 loan agreement] uneconomical, [Plaintiff] was not on this ground relieved of [her]
3 contractual obligation." *Id.*

### 7. Quiet Title

Lastly, Plaintiff contends that the Court should quiet title and "establish[ ] Plaintiff's estate as fee simple absolute." (Doc. 1, Ex. 1 at ¶ 141). Under Arizona law, however, title cannot be quieted unless Plaintiff pays off the full amount of the mortgage. *Farrell v. West*, 57 Ariz. 490, 491, 114 P.2d 910, 911 (1941) ("[I]f it appears there is an unsatisfied balance due a defendant-mortgagee, or his assignee, the court will not quiet the title until and unless [the plaintiff-mortgagor] pays off such mortgage lien."); *Eason v. Indymac Bank,* 2010 WL 1962309, at *2 (D. Ariz. May 14, 2010) ("[Q]uiet title is not a remedy available to the trustor until the debt is paid or tendered."); *Frazer v. Millennium Bank*, 2010 WL 4579799, at *4 (D. Ariz. Oct. 29, 2010) (same). Plaintiff does not allege that she has tendered the full amount of the mortgage. Nor does she allege that she is "ready, willing and able" to do so. *Eason,* 2010 WL 1962309, at *2. Plaintiff instead contends that "based on the standard business practice of lenders engaged in securitized loan transactions, mortgage guarantees and insurance, it is plausible that Plaintiff's Note was paid through an industry arrangement." (Doc. 15 at 16). This broad assertion, which does not state who paid Plaintiff's loan obligations or when they were paid, does not raise Plaintiff's right to relief "above the speculative level." *Twombly*, 550 U.S. at 555. Moreover, although Plaintiff's assertion does not specify what type of "industry arrangement" resulted in her loan being paid off, the Court assumes she is referring to a credit default swap. And "[t]o the extent a credit default swap pays money owed to a lender when a borrower defaults on a loan, the benefit does not accrue to the borrower." *Yares v. Bear Stearns Residential Mortg. Corp.* 2011 WL 2531090, at *6 (D. Ariz. June 24, 2011). Therefore, "even if one of the Defendants received proceeds from a credit default swap when Plaintiff defaulted on her loan, Plaintiff is not entitled to the cancellation of the loan or quiet title to the Property." *Id.* Plaintiff has failed to state a valid quiet title claim.

# CONCLUSION

Plaintiff has stated a claim for promissory estoppel against Defendant BAC Home Loans Servicing, L.P. Plaintiff has failed to state valid claims against Defendants for injunction against trustee's sale, breach of contract, tortious interference with the use and enjoyment of property, wrongful foreclosure, impracticability of performance, or quiet title.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 12) is **granted in part and denied in part**.

**IT IS FURTHER ORDERED** that Defendant Mortgage Electronic Registration Systems, Inc. is dismissed as a party to this action.

DATED this 3rd day of January, 2012.

_/s/ A. Murray Snow_
G. Murray Snow
United States District Judge